UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff-Respondent,                                Case No. 1:08-cr-1-04

v                                                   HON. JANET T. NEFF

BRANDON HITCHCOCK,

   Defendant-Movant.
_____/

**OPINION**

Pending before this Court is Brandon Hitchcock's pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him by this Court on July 28, 2008. For the following reasons, the motion is denied.

I. BACKGROUND

Brandon Hitchcock was charged on December 20, 2007 with conspiracy to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), 846. He retained defense attorney Frederick J. Blackmond to represent him. On April 10, 2008, Hitchcock entered a guilty plea before a Magistrate Judge to the charge against him (Dkt 55). This Court accepted the plea on May 9, 2008 (Dkt 77). This Court's May 9, 2008 order required Hitchcock to report to the United States Marshal in Grand Rapids on May 14, 2008 and be detained pending his sentencing on July 28, 2008.

On May 14, 2008, defense attorney Blackmond filed a Motion to Extend Defendant's Order for Remand Pending Sentencing (Dkt 79). In support of a stay of the detention order, defense

counsel represented that Hitchcock was scheduled to have surgery on June 9, 2008. Mot. ¶ 4D. This Court denied the motion without prejudice to renewing it on compliance with W.D. Mich LCrimR 12.4 (Attempt to Obtain Concurrence) and medical substantiation of the need for said surgery (Dkt 80).

On June 3, 2008, defense attorney Blackmond filed a Motion for Reconsideration of Release Pending Sentencing, which was docketed as a Motion to Modify Conditions of Release (Dkt 85). Being unconvinced that a stay or modification of its detention order was warranted, the Court denied the motion on June 17, 2008 (Dkt 87).

The probation officer preparing the Presentence Investigation Report for the sentencing on July 28, 2008 computed Hitchcock's base Offense Level as 26 pursuant to U.S. SENTENCING GUIDELINES (U.S.S.G.) § 2D1.1. The probation officer recommended that Hitchcock receive a downward departure of two levels, pursuant to U.S.S.G. § 3E1.1(a), for Acceptance of Responsibility. Moreover, in anticipation of the government's motion and pursuant to U.S.S.G. § 3E1.1(b), the probation officer reduced the Offense Level an additional level for Timeliness of Acceptance. As a result, Hitchcock's total adjusted Offense Level was 23. With a Criminal History Category III, Hitchcock's guideline sentencing range was 57 to 71 months in prison, which, due to the statutory mandatory minimum sentence of 5 years in prison, *see* 21 U.S.C. § 841(b)(1)(B)(vii), was modified to 60 to 71 months in prison. Neither the government nor Hitchcock had any objections to the final Presentence Investigation Report.

On July 22, 2008, without notice to either defense attorney Blackmond or the government, Hitchcock mailed ex parte correspondence directly to the Court, which he titled a "motion for a downward departure variance under title 18 U.S.C. 3553(a)." The Court received the

correspondence on July 23, 2008. That same day, the Court faxed copies to defense attorney Blackmond and the United States Attorney's Office and hand-delivered a copy to the probation officer.

On July 27, 2008, defense attorney Blackmond filed a Sentencing Memorandum, arguing for a downward departure on Hitchcock's behalf and delineating several reasons in support, including Hitchcock's "acknowledgment of wrongdoing" and "willingness to change" (Dkt 97).

However, at sentencing, the Court determined that Hitchcock's correspondence clearly indicated that he, in fact, had not accepted responsibility for the offense of conviction. Specifically, the Court stated the following:

> I calculated the guidelines, too, and I must say that it's somewhat unusual for me to come out with different calculations than the probation officer because they are always so careful in their calculations. But in this case, frankly, after reading the defendant's letter to me – which goes on at some length – I calculated the guidelines offense level at 26 instead of 23.
>
> And that is reflective of a change in paragraphs 73 and 7 – I'm sorry. 85 and 86. I do not believe that Mr. Hitchcock is entitled to a two-level reduction in the offense level based on an acceptance of responsibility. He clearly has not accepted responsibility.
>
> And just to give the record a little flavor for why I think that, he spends a great deal of time in his letter to me making light of his previous criminal history, going so far to say as he has never participated in any serious felony activities, although, I'm not sure what a nonserious felony activity might be.
>
> He goes on to say that his only participation in this case was to help a childhood friend out. And that his assistance would have earned him just minimal cash and marijuana for personal use. I point out, again, that the defendant provided, I believe, at least three-fourths of the $10,000 payment necessary to receive the 250 pounds of marijuana.
>
> He goes on in his letter to say he's never been a nuisance, which is clearly belied by his criminal history. He complains at length about downward departures for co-defendants, and I'm not really sure where he obtained this belief, but, in fact,

> none of the defendants in this case, including Mr. Hitchcock, is entitled to a 5K1.1 departure. And all are looking at a mandatory minimum of 60 months.
>
> His letter is full of excuses, blaming others for his behavior, including his co-defendants, and his lawyer, going so far to say that in respect to the lack of a 5K1 departure, which, as indicated, he is clearly not entitled to: quote "He..." referencing himself, Mr. Hitchcock, "...puts total responsibility and blame on his attorney." So I cannot in good conscience, I just can't grant an adjustment for acceptance of responsibility. So adding back the two points which were deducted in paragraph 85, and, as required, adding back the one point which was deducted in paragraph 86, my calculation of the offense level is 26. [Sent. Tr. 6-8.]

As a result, Hitchcock's total adjusted Offense Level was 26, which, at Criminal History Category III, resulted in a guideline sentencing range of 78 to 97 months in prison. The Court sentenced Hitchcock to 78 months in prison; 5 years supervised release; a fine of $2,000.00; and a special assessment of $100.00. At the conclusion of the sentencing, the Court advised Hitchcock of his right to appeal and the ten-day time period within which a Notice of Appeal must be filed. *See* FED. R. APP. P. 4(b)(1)(A)(i). Hitchcock acknowledged receipt of the Appeal Packet (Dkt 107). No appeal was filed.

On February 2, 2009, Hitchcock filed this § 2255 motion, presenting two arguments in support of his claim of ineffective assistance of counsel (Dkt 117). The government filed its response on April 2, 2009 (Dkt 122). On April 22, 2009, Hitchcock filed a reply (Dkt 124).

II. ANALYSIS

A. Section 2255 Motion

A prisoner who moves to vacate his sentence under 28 U.S.C. § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

To prevail on a § 2255 motion, the movant must demonstrate "the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows either (1) "cause" excusing his double procedural default and "actual prejudice" resulting from the errors of which he complains or (2) "actual innocence." *Massaro v. United States,* 538 U.S. 500, 504 (2003); *Bousley v. United States,* 523 U.S. 614, 622 (1998); *United States v. Frady,* 456 U.S. 152, 167-68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro,* 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the movant could have raised the claim on direct appeal. *Id.*

In an action to vacate or correct a sentence, a court is generally required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the movant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999)).

For the reasons stated *infra,* the files and records in this case conclusively show that Hitchcock is entitled to no relief under 28 U.S.C. § 2255. Accordingly, no evidentiary hearing is required to resolve the merits of the pending motion.

B. Ineffective-Assistance-of-Counsel Claim

Hitchcock makes two arguments in support of his claim that his counsel rendered him ineffective assistance. Each argument is reviewed under the two-prong test from *Strickland v. Washington*, 466 U.S. 668 (1984), which the Supreme Court established to evaluate ineffective assistance of counsel claims.

To establish ineffective assistance of counsel, a movant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. The movant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Even if a court determines that counsel's performance was outside that range, the movant is not entitled to relief if he was not prejudiced by counsel's error. *Id.* at 691. To establish prejudice, the movant must show that there is a reasonable probability that, but for the errors of counsel, his sentence would have been different. *Wiggins v. Smith,* 539 U.S. 510, 534 (2003) (quoting *Strickland,* 466 U.S. at 694).

When deciding a claim of ineffective assistance of counsel, a court "need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States,* 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland,* 466 U.S. at 697). "If it is

6

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Strickland*, 466 U.S. at 697.

1. *Denial of Acceptance-of-Responsibility Reduction*

Hitchcock argues that his trial counsel was ineffective because he failed to consult with Hitchcock before his sentencing, despite repeated requests from Hitchcock and his family. Hitchcock states in his motion that "[i]t was as if Mr. Blackmond had disappeared." Mot. 3. Hitchcock represents that he felt "panicked and without the benefit of counsel" and "made the mistake ... to contact the Court directly, via a makeshift motion largely drafted by a fellow County Jail inmate in which he attempts to make points in mitigation." *Id.* Hitchcock argues that if Blackmond had "met with and consulted with [him], and advised him of how to proceed at sentencing, [he] never would have filed a misleading and ultimately unnecessary motion with the Court, resulting in the loss of his points for acceptance of responsibility." *Id.* 6.

The government responds by characterizing Hitchcock's argument as "disingenuous." The government attached to its response an affidavit from defense attorney Blackmond, wherein Blackmond states in pertinent part the following:

D. That at the time the Plea was taken, counsel for Defendant met with Defendant and discussed what needed to be accomplished prior to Sentencing.

E. That this discussion centered on what Affiant needed from Defendant, which included letters of support and any other documentation that would assist us in the Sentencing phase.

F. That Affiant also indicated to Defendant that he would be filing our own Memorandum to the Court asserting our position most favorable to him for Sentencing purposes, and that all documents to be considered by the Court at Sentencing should be first sent to Affiant to be included in the said Memorandum.

7

* * *

  K.  That the said preparer of the Presentence Report remarked to counsel at Sentencing that he also made it clear to Defendant at his interview with him to not send anything to the Court, to send it to counsel first.

* * *

  M.  That Affiant provided Defendant with all reports, including the Presentence Report and went over its contents.

  The government opines that defense counsel was caught unaware of Hitchcock's action in mailing his "motion" directly to the Court, given his direction to Hitchcock to send all documents to him. The government opines that Hitchcock, of his own free will and without his attorney's knowledge, chose to take the advice of a fellow inmate over the advice of his retained attorney. Hence, the government concludes that Hitchcock, by his own action, not by any error by defense counsel, made acceptance of responsibility an issue at sentencing, when acceptance of responsibility would have otherwise been a foregone conclusion. The government also points out that Hitchcock's claim of lack of communication with his attorney is belied by his defense counsel's filing of two pre-sentence motions, motions that were based upon medical information provided by defendant and/or his family.

  The Court agrees with the government that Hitchcock's argument lacks merit.

  Again, in order to prevail on a claim of ineffective assistance of counsel, "[t]he defendant must show that there is a reasonable probability that, but for *counsel's* unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694 (emphasis added). Here, Hitchcock's own actions, in unilaterally filing the "motion" with the Court and choosing therein to minimize his involvement in the drug conspiracy, cost him the acceptance-of-responsibility reduction. Defense counsel is not responsible for Hitchcock's actions.

Moreover, Hitchcock's argument is contrary to the representations Hitchcock made on the record to this Court at sentencing. Hitchcock agreed that he was "satisfied" with attorney Blackmond's representation and that attorney Blackmond had been "available" to him for his questions and concerns. Sent. Tr. 4. Indeed, Hitchcock stated that attorney Blackmond "went over all my report and everything" and that any communication issue Hitchcock referenced in his correspondence to the Court had since been resolved to his satisfaction. *Id.* 4-5.

## 2. *Notice of Appeal*

Hitchcock also argues that attorney Blackmond provided him ineffective assistance of counsel in failing to file a Notice of Appeal. Hitchcock claims that he made "repeated requests for Counsel to file the required Notice of Appeal following his sentencing." Mot. 15. Hitchcock also claims that Blackmond said to him, "I will file the Notice of Appeal." *Id.*

In response, the government opines that the facts underlying this ineffective-assistance-of-counsel argument, like Hitchcock's first argument, reveal only an error by Hitchcock, not any error by defense counsel. The government opines that Hitchcock's failure to retain another attorney and follow through with an appeal is not the fault of defense attorney Blackmond, whom Hitchcock expressly relieved from representing him. In support, the government highlights the following portions of attorney Blackmond's affidavit:

> Q. That Affiant immediately at the conclusion of the Sentencing asked Defendant if he wanted me to file his Appeal.
>
> R. That Defendant, now blaming Affiant for his increase in his Sentencing time, indicated he did not want me to represent him any more.
>
> S. That Affiant also received verbal threats from the family that I was to not represent Defendant any further on these proceedings.

9

T.  That despite this, Affiant immediately sent a letter to Defendant, with attachments, indicating to him the time period necessary to file an appeal.

U.  That Affiant indicated to Defendant that it was his understanding that he and the family no longer wanted me to represent him, and that if he did not hear anything to the contrary during the time period of filing the said Appeal, he would assume that it was still their desire.

The government also attached to its response a July 29, 2008 letter from attorney Blackmond to Hitchcock with a courtesy copy to Hitchcock's father. In the letter, Blackmond reminded Hitchcock of the ten-day time frame for filing an appeal, enclosed another copy of the appeal documents, and repeated his offer to file a Notice of Appeal if he heard from Hitchcock or his family.

In the reply Hitchcock filed to the government's response, Hitchcock claims that he "never fired his counselor upon conclusion of the sentencing as alleged by counsel." Reply 9. Hitchcock claims that attorney Blackmond "abandoned his client by not filing the Notice of Appeal nor requesting that new counsel be provided." *Id.*

It is well established that "it is 'professionally unreasonable' for a lawyer to fail to file an appeal when specifically instructed to do so." *Regaldo v. United States,* 334 F.3d 520, 524 (2003) (quoting *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000)). An attorney's "failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment." *Ludwig v. United States,* 162 F.3d 456, 459 (6th Cir. 1998). In contrast, a defendant who has instructed his attorney *not* to file an appeal plainly cannot later complain that his counsel performed ineffectively. *Roe,* 528 U.S. at 477.

Last, where a defendant has not clearly conveyed his wishes one way or the other, a court must first consider whether counsel consulted with the defendant about an appeal, advising the

defendant of the advantages and disadvantages of doing so, and making a reasonable effort to determine the defendant's wishes. *Roe, supra; Regalado, supra.* If counsel did perform such a consultation, his performance is constitutionally deficient only if counsel failed to appeal as expressly instructed by a defendant. *Regalado,* 334 F.3d at 524. If counsel failed to consult, the lack of consultation is professionally unreasonable only where (1) a rational defendant would want an appeal, or (2) a particular defendant reasonably demonstrated to counsel an interest in appealing. *Roe,* 528 U.S. at 480.

Here, Hitchcock fails to offer any evidence or make a specific assertion that he actually requested attorney Blackmond to file an appeal on his behalf. Hitchcock states that he "wished to exercise his right to appeal." Mot. 15. Similarly, he states that his "desire to appeal" was made "abundantly clear to counsel, both at the time of sentencing, and after through repeated attempts to contact his attorney." *Id.* 16. However, it is clear under *Roe,* 528 U.S. at 478, that merely expressing a desire to appeal is not the equivalent of specifically requesting that a Notice of Appeal be filed. *Regalado,* 334 F.3d at 525.

Hitchcock also asserts that he attempted to reach attorney Blackmond in December 2008, Mot. 15; however, these attempts were made approximately five months after his sentencing. Hitchcock offers no evidence and makes no assertion that he or a family member contacted attorney Blackmond within ten days after the sentencing, either on their own initiative or in response to attorney Blackmond's July 29, 2008 letter. In sum, Hitchcock's assertions, even if true, fail to meet the threshold for demonstrating deficient performance by attorney Blackmond in failing to file a Notice of Appeal. Hitchcock's assertions do not indicate that an appeal was specifically requested.

Moreover, the facts as asserted in attorney Blackmond's affidavit indicate that Blackmond was operating under instructions *not* to file an appeal. The Court relies on Blackmond's detailed affidavit to find that Hitchcock indicated at sentencing that he did not want to retain Blackmond any longer. *See, e.g., Cummings v. United States,* 84 F.App'x 603, 605 (6th Cir. 2003) ("the district court did not commit clear error by crediting counsel's affidavit, insofar as it indicated that [the movant] had not asked him to file an appeal."); *Odom v. United States,* No. 99-5506, 99-5768, 2000 WL 1175598, at *3 (6th Cir. Aug. 9, 2000) (same). The Court cannot conclude that counsel performed deficiently in failing to file an appeal where there was no explicit instruction to him to do so and in the face of an instruction that he was no longer retained by his client. The Court agrees with the government that Hitchcock has not, on these particular circumstances, established that attorney Blackmond's performance fell below an objective standard of reasonableness.

### III. CERTIFICATE OF APPEALABILITY

Having determined that neither of Hitchcock's arguments merits granting his motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him, this Court may also determine whether to issue a certificate of appealability. *See Castro v. United States,* 310 F.3d 900, 901-03 (6th Cir. 2002).

A certificate of appealability should issue if the movant has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, a district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the United States Supreme Court in *Slack v.*

*McDaniel*, 529 U.S. 473 (2000). *Id.* Consequently, this Court has examined Hitchcock's ineffective-assistance-of-counsel arguments under the *Slack* standard.

To warrant a grant of the certificate, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The Court holds that reasonable jurists could not find this Court's assessment of either of Hitchcock's ineffective-assistance-of-counsel arguments debatable or wrong. Hitchcock failed to demonstrate that his counsel's performance was deficient in either of the ways he claimed. Therefore, the Court denies Hitchcock a certificate of appealability as to each issue presented.

## IV. CONCLUSION

For the foregoing reasons, this Court denies Hitchcock's § 2255 motion and denies a certificate of appealability as to each issue asserted.

An Order consistent with this Opinion will be entered.


Date: November 5, 2009            /s/ Janet T. Neff  
                                                                    JANET T. NEFF  
                                                                    United States District Judge